UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| FERNANDO HERNANDEZ EPIGMENIO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v.                                           ) | No. 2:26-cv-00216-JRO-MG |
| ) | |
| BRISON SWEARINGEN, ) | |
| FIELD OFFICE DIRECTOR, ) | |
| TODD M. LYONS, ) | |
| MARKWAYNE MULLIN, and ) | |
| TODD BLANCHE,[1] ) | |
| ) | |
| Respondents.        ) | |

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

The Immigration and Nationality Act ("INA") not only authorizes but requires the Executive to detain certain aliens without a bond hearing pending decisions on their removability. The main issue in this case is whether the Petitioner, Fernando Hernandez Epigmenio, falls into the category of aliens subject to mandatory detention. He does under 8 U.S.C. § 1225(b)(2)(A). As such, his detention without bond pending removal proceedings does not violate the INA or its regulations governing bond determinations. Moreover, Petitioner's current detention does not violate the Fifth Amendment's Due Process Clause. The Court therefore **DENIES** his Petition for Writ of Habeas Corpus. Dkt. [1].

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Todd Blanche (as Acting Attorney General of the United States) is automatically substituted for Respondent Pamela Jo Bondi as a party in this suit.

## I. BACKGROUND

### A. Factual Background

The following alleged facts are not in dispute and the Court finds that they are true based on its review of the verified Petition, the answers to the Court's Order to Show Cause, and the accompanying documentary evidence. *See* 28 U.S.C. § 2242; *id.* § 2243 ("The court shall summarily hear and determine the facts . . . ."); *id.* § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true . . . .").

Petitioner is a citizen of Mexico. Dkt. 1 at 2, 7, 16; Dkt. 9 at 3; Dkt. 9-1 at 2. Around April 2006, he entered the United States without inspection and was not apprehended by immigration authorities. Dkt. 1 at 16; Dkt. 9 at 3; Dkt. 9-1 at 4. On February 15, 2026, Petitioner was arrested by local law enforcement in Marion County, Indiana, for operating a vehicle while intoxicated. Dkt. 9 at 3; Dkt. 9-1 at 3. He was convicted on March 24, 2026, and sentenced to time served. Dkt. 9 at 3; Dkt. 9-1 at 3. On or around March 25, 2026, Petitioner was taken into custody by U.S. Immigration and Customs Enforcement ("ICE") officers pursuant to a detainer and I-200 warrant. Dkt. 1 at 16; Dkt. 9 at 3; Dkt. 9-1 at 3–4; Dkt. 9-2; Dkt. 9-3. The Department of Homeland Security also initiated removal proceedings by issuing him a Notice to Appear ("NTA") the same day. Dkt. 9 at 3; Dkt. 9-1 at 3–4; Dkt. 9-3 at 1–4.

The NTA charges that Petitioner is removable based on 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted

2

or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.") and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of valid entry documentation).  Dkt. 9 at 3; Dkt. 9-3 at 5.  Petitioner's removal proceedings are ongoing, and he is currently detained at the Clay County Justice Center in Brazil, Indiana.  Dkt. 1 at 3, 7, 16; Dkt. 1-1 at 1; Dkt. 7 at 2.

Petitioner filed the instant habeas action.  Dkt. 1.  He names as Respondents Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; Todd M. Lyons, Acting Director of ICE; the Director of the Chicago ICE Field Office; Todd Blanche, Acting Attorney General of the United States; and Brison Swearingen, Sheriff of the Clay County Justice Center.  Dkt. 1 at 7–8.

## B.    Statutory Background

As amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), two statutory provisions principally govern the detention of aliens pending their removal proceedings—8 U.S.C. § 1225 and 8 U.S.C. § 1226.  While Section 1225 mandates detention in all cases, Section 1226 permits the release of some aliens on bond.

Key to Section 1225 is its definition of "applicant for admission."  Section 1225(a)(1) defines an "applicant for admission" as an alien "who arrives in the United States" or who is "present in" the country but "has not been admitted."  8 U.S.C. § 1225(a)(1).  The Supreme Court has explained that "applicants for admission fall into one of two categories"—"those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1) generally requires the detention and expedited removal of "arriving" aliens and certain other aliens determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation.   8 U.S.C. § 1225(b)(1).  Section 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)." *Jennings*, 583 U.S. at 287.   With exceptions not relevant here, Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A) (emphasis added).   In other words, detention is mandatory pending removal proceedings.

Section 1226(a), by contrast, more generally provides that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a) (emphasis added).  Section 1226(a) also permits the Attorney General to release an alien on "bond" or "conditional parole," unless the alien "falls into one of several enumerated categories involving criminal offenses and terrorist activities."  *Jennings*, 583 U.S. at 289; *see* 8 U.S.C. § 1226(c)(1)(A)–(E). For those enumerated categories, detention pending removal is also mandatory.

## II.  DISCUSSION

Petitioner seeks release from detention while he awaits his removal proceedings because he contends he is detained pursuant to a recent, unlawful

4

policy shift by Respondents.  Respondents rely upon Section 1225(b)(2)(A) to detain Petitioner without a bond hearing pending his removal proceedings because they argue he is an "applicant for admission."  Petitioner claims that Section 1226(a) and its associated regulations govern his detention and that he not only has a right to a bond hearing but is entitled to "immediate release" because "the government lacks a lawful basis upon which to detain him."  Dkt. 1 at 3; *see id.* at 19.  He also claims that his detention violates his due process rights under the Fifth Amendment.[2]  *Id.* at 17.  Ultimately, Petitioner is not entitled to the relief he seeks.

## A.    Section 1225 Applies to Petitioner

Section 1225's plain terms require Petitioner's detention pending his removal proceedings.  When engaging in statutory interpretation, the Court "start[s] with the text of the statute to ascertain its plain meaning." *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) (internal quotation and citation omitted).  In determining a statute's plain meaning, the Court is guided by the statutory language at issue and the language and design of the statute as a whole.  *Id.* at 852.  Unless specifically defined, a statute's words are given their "ordinary, contemporary, and common meaning by looking at what they meant when the statute was enacted . . . ." *Id.*

---

[2] In his petition, Petitioner argues that the Court should not require exhaustion of administrative remedies in this case.  Dkt. 1 at 4–7.  Respondents do not argue exhaustion in their Returns to the Order to Show Cause, dkts. 7, 9, so the Court does not address the issue.

To start, Petitioner is an "applicant for admission."  The term is expressly defined in the statute as follows: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1).  While the definition of "applicant for admission" does encompass aliens who may have recently arrived at a port of entry or crossed the border, that definition is broader.  "[A]pplicant for admission" includes any unadmitted alien present in the United States no matter when they entered or how long they have been here.  *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026) ("Presence without admission deems the petitioners to be applicants for admission.").  There is no dispute that Petitioner is an alien who is present in the United States and has not been admitted.  He is therefore deemed an "applicant for admission" under the statute.

As noted above, the detention of applicants for admission falls into one of two statutory categories—Section 1225(b)(1) or the "catchall" Section 1225(b)(2). *Jennings*, 583 U.S. at 287.  No party argues the former applies in this case. Section 1225(b)(2)(A) requires the detention of applicants for admission pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  Petitioner makes no argument that he is "clearly and beyond a doubt entitled to be admitted" to the country.  Thus, Section 1225(b)(2)(A) mandates his detention pending removal proceedings.  *See Escobar v. Bondi*, No. 2:26-cv-

00182-JRO-MG, 2026 WL 868779, at *1–3 (S.D. Ind. Mar. 30, 2026) (concluding the same on materially indistinguishable facts).

Petitioner raises several arguments rejecting this straightforward application of Section 1225. The Court does not find these arguments persuasive.

### 1. "Seeking Admission"

First, Petitioner argues Section 1225(b)(2)(A)'s "seeking admission" language limits its applicability to "recent arrivals" who, unlike himself, affirmatively seek lawful entry into the United States. Dkt. 1 at 8, 10; Dkt. 10 at 4–5.

The Seventh Circuit—in dicta and an emergency stay posture on a non-habeas matter—has preliminarily agreed with Petitioner's reading. *See Castanon v. U.S. Dep't Homeland Sec.*, 161 F.4th 1048, 1060–63 (7th Cir. 2025). So too have other judges within this District. *See, e.g.*, *Alejandro v. Olson,* --- F. Supp. 3d ---, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025) ("The phrase 'seeking admission,' . . . means that a noncitizen must be actively 'seeking' 'lawful entry.'" (internal citation omitted)); *Campos Leon v. Forestal*, No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sep. 22, 2025) ("Meanwhile, the respondents' contention that Mr. Campos Leon's detention is mandatory under § 1225(b)(2) is, at best, incomplete. Assuming for the sake of argument that Mr. Campos Leon is an 'applicant for admission,' the respondents has not explained how he is 'seeking admission' such that § 1225(b)(2) applies."). While these decisions warrant serious consideration,

they are not binding upon this Court. The Seventh Circuit has emphasized that decisions from motions panels at the stay stage, even those directly on point, are "not entitled to the weight of a decision made after plenary submission" because they are "summary in character" and "made often on a scanty record." *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991). And "district court opinions lack precedential force even vis-à-vis other judges in the same judicial district." *Trump v. CASA, Inc.*, 606 U.S. 831, 858 n.17 (2025) (citation omitted).

Respectfully, this Court reads Section 1225(b)(2)(A) differently, in line with persuasive authority from the Fifth and Eighth Circuits, each of which addressed the precise issue on the merits in a habeas action—*Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026)—as well as other district court judges within the Seventh Circuit.[3]

This Court has previously determined that the statutory language and context confirm that there is no separate and independent "seeking admission" element to Section 1225(b)(2)(A). *See Demir v. Noem*, No. 2:26-cv-00086-JRO-MKK, 2026 WL 706485, at *4 (S.D. Ind. Mar. 13, 2026); *Singh v. Swearingen*, No. 2:26-cv-00167-JRO-MG, 2026 WL 847715, at *5 (S.D. Ind. Mar. 27, 2026). Read most plainly, the term "seeking admission" is simply a synonym for applying for admission. And applying for admission is a participial form of the noun

---

[3] *Rayo v. Olson*, No. 2:25-cv-2064-BHL, 2026 WL 594079 (E.D. Wis. Mar. 3, 2026); *Hernandez v. Olson*, No. 2:25-cv-1670-BHL, 2026 WL 161509 (E.D. Wis. Jan. 21, 2026); *Rodriguez v. Olson*, 814 F. Supp. 3d 945 (N.D. Ill. 2026) (Pacold, J.); *Ugarte-Arenas v. Olson*, No. 2:25-cv-1721-WCG, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025), *appeal docketed*, No. 26-1023 (7th Cir. Jan. 7, 2026); *Rojas v. Olson*, No. 2:25-cv-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025), *appeal docketed*, No. 25-3127 (7th Cir. Nov. 25, 2025).

"applicant for admission."   *See Buenrostro-Mendez*, 166 F.4th at 502 ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"); *Avila*, 170 F.4th at 1134 ("When a person applies for something, they are necessarily seeking it." (cleaned up)).

This plain language reading that *all* "applicant[s] for admission" are, by definition, "seeking admission" does not render superfluous the words "seeking admission" in Section 1225(b)(2)(A).  Rather, because "applicant for admission" is expressly defined in the statute, it is best understood to qualify the broader meaning of "seeking admission."  *Cf. United States v. Woodward*, 376 F.2d 136, 141 (7th Cir. 1967) (holding statutory terms "'alarm or disturb' . . . qualify the broader meaning of 'breach of the peace'" and are not superfluous).  This makes sense, as one can also "seek[] admission" even when he is not at a port of entry or present in the United States.  *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 741 (BIA 2012) (noting, for example, "an alien can 'again seek[] admission' . . . by applying for a visa at a consulate abroad").

Indeed, other provisions in Section 1225 demonstrate that all "applicant[s] for admission" are "seeking admission," not just those who recently arrived. Take Section 1225(a)(3), which provides that "[a]ll aliens . . . who are applicants for admission *or otherwise* seeking admission . . . shall be inspected by immigration officers."  The provision's use of "or otherwise" indicates that "'applicants for admission' are a subset of those 'seeking admission.'" *Buenrostro-Mendez*, 166 F.4th at 503; *see also Avila*, 170 F.4th at 1135 n.4.

Consider too Section 1225(a)(5): "An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States . . . ." (emphasis added). Notably, the provision refers to the purposes and intentions of "the *applicant* in seeking admission"—not "the arriving alien in seeking admission." In other words, all "applicant[s] for admission" are necessarily "seeking admission," regardless of when they arrive.

What's more, Congress knew how to say "arriving alien" when it wanted to in Section 1225. It did not need to qualify "applicant for admission" with a separate and independent "seeking admission" requirement to achieve that effect. For example, Section 1225(b)(1)(A) explicitly limits its applicability to (1) "an alien . . . who is arriving," and (2) certain other unadmitted aliens who do not have two years of continuous physical presence in the United States. Tellingly, Section 1225(b)(2)(A) contains no such temporal limitation. *See Negrete Ramirez v. Noem*, No. 1:25-cv-00206-CMS, 2026 WL 251725, at *3 (E.D. Mo. Jan. 30, 2026) ("If Congress intended that an alien no longer is 'seeking admission' after some amount of time in the United States, it could have said so.").

Petitioner may find it strange that he could be "seeking admission" if he is already in the United States. But that is a feature of Section 1225, not a bug. The INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Petitioner never effected a *lawful* entry into the country. He

was not admitted.  In the eyes of the INA, he remains an "applicant for admission" knocking on the proverbial door—that is, "seeking admission."  This is not a novel or even recent understanding of our immigration laws.  In 2012, the Board of Immigration Appeals explained:

> In ordinary parlance, the phrase "seeks admission" connotes a request for *permission* to enter . . . .  The problem, however, is that Congress has defined the concept of an "applicant for admission" in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission, or who have been brought in against their will under certain circumstances. . . . In other words, many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be "seeking admission" under the immigration laws.

*Matter of Lemus-Losa*, 25 I. & N. Dec. at 743 (emphasis in original).  Thus, the term "seeking admission" does not create an independent pre-requisite for mandatory detention under Section 1225(b)(2)(A).

### 2.  *Jennings v. Rodriguez*

Second, Petitioner argues he is not subject to mandatory detention because, broadly speaking, Section 1225 "is concerned 'primarily [with those] seeking entry,' and is generally imposed 'at the Nation's borders and ports of entry.'"  Dkt. 1 at 10 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)) (alteration in original); *see also* Dkt. 10 at 5.  Petitioner, by contrast, has been in the country for approximately twenty (20) years.  *Accord Mohammed v. Olson*, No. 1:25-cv-02404-TWP-MKK, 2025 WL 3541819, at *4 (S.D. Ind. Dec. 10, 2025)

11

("Considering § 1225 as a whole demonstrates that the most natural meaning of § 1225 is that it applies to 'arriving' noncitizens attempting to enter the United States.").

General characterizations of a statute's overall purpose, however, cannot substitute for its specific and plain words. *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) ("[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity . . . in the statute's text."). As this Court discussed in a prior Order, Section 1225 concerns "applicant[s] for admission," which is a clearly defined term that includes but is not restricted only to arriving aliens or other recent border crossers. *Demir*, 2026 WL 706485, at *5.

The Supreme Court did not hold otherwise in *Jennings v. Rodriguez*. That decision repeatedly stated that it was summarizing Sections 1225 and 1226 in "general" terms. *See Jennings*, 583 U.S. at 287 ("That process of decision *generally* begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." (emphasis added)); *id.* at 288 ("Section 1226 *generally* governs the process of arresting and detaining [aliens inside the United States] pending their removal." (emphasis added)). *Accord Buenrostro-Mendez*, 166 F.4th at 505; *Avila*, 170 F.4th at 1136.

Granted, it is beyond question that Section 1225 applies to aliens "at the Nation's borders and ports of entry." Dkt. 1 at 10 (quotation omitted). Section 1225, however, does not apply *only* to recent arrivals but to all non-admitted aliens present in the country, regardless of when they arrived. Any argument

12

based on how this statute applies in many or even most cases does not tell us anything about what it means in every case, and specifically, nothing about what it means when applied to the facts before the Court today.

### 3.    1225 Versus 1226

Third, Petitioner argues that Section 1226, not Section 1225(b)(2)(A), "applies to individuals who have not been admitted and entered without inspection." Dkt. 1 at 9–10. This Court also rejected this argument in a previous Order. *Demir*, 2026 WL 706485, at *5–6. Petitioner's argument incorrectly presumes that Sections 1225 and 1226 are mutually exclusive and may never overlap. Other courts in this District have essentially agreed, holding that once the Government has already invoked its authority under Section 1226(a) by arresting an alien pursuant to an I-200 warrant, the Government is limited to the process described in Section 1226 and is barred from relying upon Section 1225. *See, e.g.*, *Mohammed*, 2025 WL 3541819, at *3 ("[T]he Government has affirmatively decided to treat' the Petitioner 'as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that he is detained under Section 1225(b)." (quoting *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025)).

But, respectfully, nothing in the plain text of Sections 1225 and 1226 suggests that the mandates and procedures in these sections are mutually exclusive. They merely overlap. *See Buenrostro-Mendez*, 166 F.4th at 505–06; *Avila*, 170 F.4th at 1137. First, much of Section 1226 applies expressly to *admitted* aliens who may be arrested, detained, and removed for various reasons,

13

such as committing certain criminal acts. *E.g.,* 8 U.S.C. §§ 1226(c)(1)(B), (C) (referring to 8 U.S.C. § 1227(a)(2)). When an arrestee is an admitted alien, Section 1226's bond provision clearly applies. But this does not necessarily imply that the bond provision must also apply when an arrestee is an *unadmitted* alien who falls squarely within the plain meaning of Section 1225(b)(2)(A)'s mandatory detention provision. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. at 219 ("Section [1226] does not purport to overrule the mandatory detention requirements . . . in section [1225](b)(1) and (2).").

"[I]t is a commonplace of statutory construction that the specific governs the general[,]" especially when construing comprehensive statutory schemes—like the INA—that are often interspersed with "specific solutions" to "specific problems." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) and *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)). "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel*, 566 U.S. at 645. "[T]he canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one." *Id.* Here, the INA contains a general provision—the Attorney General may release most ICE arrestees on bond, 8 U.S.C. § 1226(a)—and a specific provision—every "applicant for admission" must be detained without a bond hearing, 8 U.S.C.

14

§ 1225(b)(2)(A).  The specific is the exception to the general, and it applies to Petitioner in this case.  *Accord Rodriguez v. Olson*, 814 F. Supp. 3d 945, 958 (N.D. Ill. 2026) (applying general/specific canon to enforce Section 1225(b)(2)(A) over Section 1226(a)); *Ayala v. Harper*, No. 1:26-cv-204-CLM-GMB, 2026 WL 501113, at *8 (N.D. Ala. Feb. 23, 2026) (same).

Applying the general/specific canon here is consistent with the plain text and structure of Section 1225 and 1226, as explained above.  Further, Section 1226(a) is permissive: "[A]n alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added).  In other words, the Government is free to exercise its discretion in how it executes the provisions of Section 1226 provided it does so within the bounds of Section 1225(b)(2)(A)'s clear mandate to detain "applicants for admission" pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  Enforcing that more specific mandate of Section 1225(b)(2)(A) does not render any of Section 1226 superfluous as to the Petitioner.  It harmonizes the two provisions.  At any rate, a "preference for avoiding surplusage constructions is not absolute," especially when the general/specific canon better harmonizes the apparently conflicting statutory provisions.  *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004); *RadLAX Gateway Hotel*, 566 U.S. at 645; *see also Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Sometimes the better overall reading of the statute contains some redundancy.").

15

Petitioner's perspective on the meaning of Section 1225(b)(2)(A) necessarily implies that aliens who evade inspection and detention at a port of entry enjoy the privilege of a bond hearing while those who submit to inspection upon first arrival do not. As the Fifth Circuit explained, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) aimed to "reduce th[at] incongruity." *Buenrostro-Mendez*, 166 F.4th at 499; *see also Avila*, 170 F.4th at 1135; *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (explaining IIRIRA "did away with" the "anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully"). Nothing in the text of the statute suggests that the privilege of a bond hearing is based upon the arbitrary standard of avoiding inspection and living in the United States for an unspecified time.

Granting habeas relief on the premise that ICE does not have the statutory right to detain him—despite his non-admitted status—leads to the conclusion that the force of Section 1225(b)(2)(A) arbitrarily dissipates with time. Yet that is precisely what Petitioner argues here by arguing that Section 1225 applies only to "recent arrivals," dkt. 1 at 8, and not someone "who has been residing in the United States for approximately twenty years," dkt. 10 at 3. That is plainly not what Congress meant when it wrote "seeking admission" in Section 1225(b)(2)(A) or enacted the bond hearing provision in Section 1226(a). It is also inconsistent with Congress's IIRIRA amendments and encourages the "perverse incentive to enter at an unlawful rather than a lawful location" against which the Supreme Court has warned. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S.

16

103, 140 (2020) ("Like an alien detained after arriving at a port of entry, an alien like respondent is 'on the threshold.'  The rule advocated by respondent and adopted by the Ninth Circuit would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location." (citations omitted)).

### 4.     Past Practice

Petitioner also argues that Respondent's application of Section 1225(b)(2)(A)'s mandatory detention provision not only to recent arrivals but also to unadmitted aliens already in the country like himself is contrary to decades of agency practice.  Dkt. 1 at 9, 11–12.  However, the Court takes seriously its independent duty to interpret the law as written, regardless of an agency's past practice.  And "in cases where [a court's] own judgment . . . differ[s] from that of other high functionaries," the Court is "not at liberty to surrender, or to waive it.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (quoting *United States v. Dickson*, 40 U.S. 141, 162 (1841) (Story, J.)).  Past practice aside, Respondent's interpretation of "seeking admission" is not entirely novel.  *See Matter of Lemus-Losa*, 25 I. & N. Dec. at 743.

* * *

In sum, Petitioner is subject to mandatory detention pending removal proceedings under the plain terms of Section 1225(b)(2)(A).  As he is not eligible for a discretionary bond hearing, the Court does not address his argument for immediate release.  Dkt. 1 at 20–21; Dkt. 10 at 1, 15–16.

17

**B.      Bond Regulations**

Petitioner next argues that "[t]he application of § 1225(b)(2) to [himself] unlawfully mandates his continued detention and violates [the bond regulations at] 8 C.F.R. §§ 236.1, 1236.1, and 1003.19." Dkt. 1 at 16–17.  But this argument simply restyles his previous argument that Section 1226(a) applies to his detention and not Section 1225.

The regulations Petitioner cites implement and elaborate upon the procedures prescribed by Section 1226.   As their shared title suggests, the regulations at 8 C.F.R. §§ 236.1 and 1236.1 concern the same subject matter— "apprehension, custody, and detention."  These regulations include procedures for the Section 1226(a) bond determinations and appeals thereof.  For example, both regulations state:

> Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in **section 236(c)(1) of the Act** [8 U.S.C. § 1226(c)(1)], under the conditions at **section 236(a)(2) and (3) of the Act** [8 U.S.C. § 1226(a)(2), (3)]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.

8 C.F.R. § 236.1(c)(8); *id.* § 1236.1(c)(8) (emphasis added).  They also provide:

> [T]he immigration judge is authorized to exercise the authority in **section 236 of the Act** [8 U.S.C. § 1226] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter.

8 C.F.R. § 236.1(d)(1); *id.* § 1236.1(d)(1) (emphasis added).  For its part, 8 C.F.R. § 1003.19 further specifies that "bond determinations made by the service

18

pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236" and establishes procedures for such review.

These regulations implement Section 236 of the INA, that is, 8 U.S.C. § 1226, and impose no broader obligation on the government than Section 1226 itself.  *See Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 301 (2022) ("An agency's regulation cannot operate independently of the statute that authorized it." (internal quotation marks and citation omitted)).  The Court has determined that Section 1225 governs Petitioner's detention—not Section 1226 and its discretionary bond provision.  The cited bond regulations therefore do not apply to Petitioner, and Respondents have not violated them by detaining him without bond pending removal proceedings.

## C.    Due Process

Finally, Petitioner argues his detention without bond pending removal proceedings violates his due process rights under the Fifth Amendment.  Dkt. 1 at 17–23.  He says that he "does not seek habeas relief based on the *duration* of his detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001)," but rather "challenges the lawfulness of his continued detention itself, irrespective of its length."  Dkt. 10 at 12; *see id.* at 12–14.

The Due Process Clause applies to aliens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.  However, the Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process."  *Demore v. Kim*, 538 U.S. 510, 531 (2003).  That holding settles

19

the issue.  And this Court reached the same conclusion in a previous action that is materially indistinguishable from this case.  *Demir*, 2026 WL 706485, at \*7–8.

Petitioner argues that due process requires effectively requires an individualized assessment to determine whether he is a safety or flight risk.  Dkt. 1 at 18–19, 21; Dkt. 10 at 9–10.  He says that without this individualized determination, his "continued detention bears no reasonable relationship to the purposes of the INA."  Dkt. 10 at 13; *see id.* at 13–14.  Not so.  The Supreme Court already anticipated this objection and rejected it: "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Demore*, 538 U.S. at 528.  Applied to Petitioner, this means that Respondents do not have to justify mandatory detention on a case-by-case basis.  Respondents may enforce the policy Congress already adopted when it enacted the mandatory detention provision in Section 1225(b)(2)(A) without an individualized bond hearing.

Although Petitioner does not challenge the duration of his detention, the Supreme Court in *Zadvydas* nonetheless reinforced that due process concerns are mitigated in the context of "detention pending a determination of removability," which has an "obvious termination point."  *Zadvydas*, 533 U.S. at 697.  The Supreme Court held detention for up to six months was presumptively constitutional.  *Id.* at 701.  Petitioner has been detained by ICE pending his removal proceedings for approximately one month.  Accordingly, Petitioner's current detention by ICE does not violate his due process rights.

20

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner Fernando Hernandez Epigmenio's Petition for Writ of Habeas Corpus and **DISMISSES** this case with prejudice.  Dkt. [1].  Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 5/5/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email